**Jackson B. HESTER, Jr.**

v.

**Hans ALLGEIER and Andre Gagneux.**

No. 82–508.

United States Court of Customs
and Patent Appeals.

Sept. 2, 1982.

Rehearing Denied Oct. 13, 1982.

Sidney W. Russell, Peter J. Georges, Arlington, Va., and John T. Reynolds, John Kekich, Kalamazoo, Mich., for appellant.

Joseph G. Kolodny, New York City, and Karl F. Jorda, Ardsley, N.Y., for appellees.

Before MARKEY, Chief Judge, and RICH, BALDWIN, MILLER and NIES, Judges.

MILLER, Judge.

This is an appeal from the decision of the Patent and Trademark Office Board of Patent Interferences ("board") awarding priority of the subject matter of count 2 to the party Allgeier and Gagneux ("Allgeier") based on its holding that counts 1 and 2, the only counts in interference, are patentably distinct. (Hester has been awarded priority on count 1.) We affirm.

## BACKGROUND

This case is before the court for the second time.[1] The interference [2] was origi-

1. Our decision in the first appeal, remanding the case to the board to determine whether species count 2 is patentably distinct from genus count 1, is reported at 646 F.2d 513, 209

USPQ 370 (Cust.&Pat.App.1981). Familiarity with the first opinion will be presumed.

2. Interference 98,875, declared January 23, 1975, between application serial No. 199,770 to

nally declared on one count drawn to a chemical genus having central nervous system tranquilizing properties. During the motion period, based on comparative tests set forth in the declaration of Delini-Stula which was introduced by Allgeier, the primary examiner on his own motion added count 2 to the interference, stating that counts 1 and 2 were patentably distinct. Count 2 is drawn to the methanol species of the genus set forth in count 1. Hester submitted counter-affidavits setting forth comparative tests conducted by the employees of his assignee and unsuccessfully contested the examiner's holding of patentable distinctness.

In its original decision, the board awarded priority to Hester on count 1 and to Allgeier on count 2. It also held that Allgeier had satisfied the "best mode" requirement, assuming, arguendo, that "best mode" was ancillary to priority. However, the board expressly declined to consider whether counts 1 and 2 were patentably distinct, holding that patentable distinctness was not ancillary to priority. On appeal, this court held that whether counts 1 and 2 were patentably distinct was ancillary to priority, the board's decision was vacated, and the case was remanded for consideration of the patentable distinctness issue.

On remand, the board vacated the portions of its opinion dealing with patentable distinctness and best mode and said:

> Insofar as the issue of patentable distinctness of the counts is concerned, it is our view that as the proponent of the proposition that count 2 should not have been included in the interference, Hester bears the burden of persuasion. Cf. *Weil v. Fritz*, 601 F.2d 551, 202 USPQ 447 (CCPA 1979). Acting pursuant to 35 USC 135(a), the primary examiner, the Commissioner's delegate, from the evidence before him at the time, concluded that the count should be added; in his

opinion a second interference existed as to the species of count 2, the methanol compound. In the absence of clear evidence to the contrary, we are not inclined to disturb the finding of the examiner in a situation such as we have here. [Citations omitted.] We find no such clear evidence in the record before us.

There appears to be no dispute here that the methanol compound, when administered orally, has a higher initial potency that [*sic*] the ether, and it was this fact that convinced the examiner that count 2 was patentably distinct from count 1, i.e., that the methanol compound was *unobvious* over the genus of count 1 because it had the unexpected property of higher initial potency. Cf. *In re Albrecht*, 579 F.2d 92, 198 USPQ 208 (CCPA 1978). In reaching this conclusion, the examiner had before him not only the affidavits submitted by Allgeier et al., but those submitted by Hester, i.e., the Von Voigtlander, Reineke and Eberts affidavits. We find no subsequent evidence adduced by Hester under the provisions of 37 CFR 1.271 et seq. of sufficient probative value to establish that the examiner was either misled in reaching his conclusion or erroneous in his judgment that, from the evidence before him, count 2 was patentably distinct.

Indeed, Hester has adduced *no* evidence to the effect that the higher initial potency is other than an unexpected result. . . .

. . . .

We disagree with Hester that in contrariety to the holding in *In re Stewart*, 42 CCPA 937, 222 F.2d 747, 106 USPQ 115 (1955), Allgeier et al. inconsistently assert that count 2 has an "advantage" in order to support inventiveness while simultaneously relying on an application that does not disclose the advantage. We are of the view that both the Allgeier et al. benefit (Swiss) and involved applications are in accordance with *In re Slocombe*,

Hans Allgeier and Andre Gagneux, filed November 17, 1971, for "New Diazepine Derivatives," and application serial No. 317,618 to Jackson B. Hester, filed December 22, 1972, for "Organic Compounds and Process." Allgeier was accorded the benefit of Swiss application

No. 17352/70, filed November 23, 1970. Hester was accorded the benefit of application serial No. 138,278, filed April 28, 1971, and application serial No. 201,207, filed November 22, 1971.

510 F.2d 1398, 184 USPQ 740 (CCPA 1975) which held (184 USPQ at 743):

There is no requirement that superiority over prior art be disclosed in the application; it is enough if the basic property or utility in which the advantage resides is disclosed. *In re Lorenz*, 51 CCPA 1522, 333 F.2d 908, 142 USPQ 101 (1964).

[Footnotes omitted.]

## OPINION

In deciding whether the board's award of priority of the subject matter of count 2 was correct, it is necessary to determine whether the board properly held that the counts are patentably distinct.

■ Hester argues that the board improperly considered the affidavit and declaration evidence before the primary examiner to sustain the examiner's holding of patentable distinctness and that evidence in an interference must be in the form of depositions, unless otherwise stipulated by the parties. 37 CFR 1.271, 1.272. We agree that the board should not review the inadmissible *ex parte* evidence before the examiner, but, rather, should rely on evidence introduced during the testimony period to determine whether the counts are patentably distinct.

■ Motions before the primary examiner are governed by 37 CFR 1.231. Of the various motions enumerated, it is only in the case of motions to dissolve, where one party is a patentee, that "facts sought to be established by affidavits, declarations or evidence outside of official records and printed publications will not normally be considered...." There is no such prohibition against affidavit or declaration evidence in 37 CFR 1.231(a)(2), providing for motions to amend by addition or substitution of new counts. Therefore, the primary examiner properly considered the affidavits and declarations which formed the basis of his decision.

■ With respect to evidence reviewable by the board, in *Stoudt v. Guggenheim*, 651 F.2d 760, 764 n.8, 210 USPQ 359, 364 n.10 (Cust.&Pat.App.1981), this court indicated that the board should consider the question of patentable distinctness *de novo*, thus: "[A]n appropriate procedure to preserve the issue of patentable distinctness would be to adduce evidence on that issue during the evidentiary period and to then argue the issue before the board *which then renders its independent determination* of the issue." (Emphasis supplied.) If the board were merely reviewing the determination of the examiner, it would, of course, be free to consider all evidence on which the examiner based his decision. However, because the board is to make its own independent determination, interference rules govern the evidence that may be considered.

After the examiner's decision adding count 2 on his own motion, Hester twice petitioned the Commissioner pursuant to 37 CFR 1.244, with accompanying affidavits. The first petition was treated by the Commissioner as a request for reconsideration and was referred to the examiner, who denied the request after considering the arguments and supporting affidavits and declarations of both parties. Hester then petitioned the Commissioner to "set aside and reverse" the examiner's decision. The Commissioner denied this petition, stating that there was no manifest error or abuse of discretion in the examiner's holding of patentable distinctness. Thereafter, the examiner, pursuant to 37 CFR 1.231(f), redeclared the interference. The "redeclared" interference contained counts 1 and 2. Prior to the redeclaration, Hester had pursued all avenues of review then available. If he had not again raised the issue during the testimony period, the interference would have gone forward, and the propriety of two counts (as opposed to one) would not have been subject to question.

■ Hester contends that the board must review the determination of the examiner and that, although not a party to the interference, the examiner bears the burden of proof. We regard this position as untena-

ble. The interference having been redeclared, it is presumed that the two counts are patentably distinct. Hester, in seeking to overturn this presumption, has the burden of proof.[3]

During the testimony period, Hester took depositions of two expert witnesses, Doctors Rudzik and Eberts.[4] Their testimony regarding patentable distinctness was directed to interpretation of the test results set forth in the affidavits and declarations submitted by the parties to the examiner. They acknowledge that the compound of count 2 has a much higher initial potency than the ethoxy compound with which it was compared and that this property is unpredictable. Therefore, Hester's own testimony supports the conclusion that the compound of count 2 has unpredictable higher initial potency even if the affidavits and declarations are not considered.

Hester relies on opinion testimony of Doctor Rudzik that the ethoxy compound, having a uniform level of potency over time, is "a more favorable compound with the trends in psychiatric treatment at the present time" and that the ethoxy compound and the compound of count 2 have the "same general class of clinical usefulness properties." However, Doctor Rudzik also acknowledges that the immediate effect of the compound of count 2 makes it more desirable for putting a patient to sleep "fairly rapidly" and that "if you have to treat a patient that is having a seizure you might want a compound that is rapid in onset...." Thus, with respect to the presumption of patentable distinctness, Hester's testimony is clearly inadequate to satisfy his burden of persuasion to the contrary.[5]

In view of the foregoing, the decision of the board is *affirmed.*

AFFIRMED.

---

3. Hester, relying on *In re Stewart*, 42 CCPA 937, 222 F.2d 747, 106 USPQ 115 (1955) and *In re Davies*, 475 F.2d 667, 177 USPQ 381 (Cust. &Pat.App.1973), argues that because Allgeier's specification does not set forth the advantages of higher initial potency and increased activity, Allgeier cannot rely on those advantages to prove patentable distinctness. However, because *Hester* has the burden of proving that the counts are *not* patentably distinct, it is irrelevant at this point whether the case law would allow Allgeier to introduce evidence of patentable distinctness.

4. Hester also took depositions, *inter alia*, of Von Voigtlander and Reineke whose affidavits had been submitted to the examiner by Hester. These witnesses generally reaffirmed and explained their affidavit testimony. Von Voightlander stated that in tests done under his supervision, the compound of count 2 was shown to be a more potent anticonvulsant 30 minutes after administration than the ethoxy compound with which it was compared.

5. In our previous opinion in this case, we stated: "Before the board's decision can be properly reviewed, it is necessary for evidence on the threshold issue [patentable distinctness] to be more fully developed and for the board to render its opinion on that issue." 646 F.2d at 522, 209 USPQ at 378. Nevertheless, on remand, no further evidence was adduced, and Hester does not question the fact that the compound of count 2 has unpredictable, increased initial activity. Moreover, Hester neither sought additional discovery on remand nor assigned error to the failure of the board to set times for such discovery. We note that, although much of Allgeier's brief is devoted to a discussion of best mode, this issue has not been argued by Hester on appeal.